# COURT OF APPEALS OF VIRGINIA

### Record No. 0445-25-1

JULIANNE POST

v.

THE PINES HORSE FARM AND SANCTUARY, LLC

Present: Judges Causey, White and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued May 19, 2026

**FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND COUNTY OF JAMES CITY**
Joshua P. DeFord, Judge

Joshua D. Barbosa (Jonathan R. DeLoatche; Williams DeLoatche, P.C., on briefs), for appellant.

G. Christopher Jones, Jr. (Allen L. Kidd; Ryan V. Logan; Sinnott, Nuckols & Logan, P.C., on brief), for appellee.

**PUBLISHED OPINION BY**
**JUDGE STEVEN C. FRUCCI**

After being injured during a horseback riding lesson given by Pines Horse Farm and Sanctuary, LLC ("Pines Horse Farm"), Julianne Post filed a negligence claim against Pines Horse Farm in the Circuit Court of the City of Williamsburg and County of James City. Post appeals the circuit court's order granting summary judgment and dismissing the case. For the following reasons, we reverse the circuit court's decision to grant summary judgment.

## BACKGROUND

On appeal from a circuit court's entry of summary judgment, this Court applies "the same standard a trial court must adopt . . . accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason."

*Fauber v. Town of Cape Charles*, 79 Va. App. 660, 673 (2024) (quoting *Stahl v. Stitt*, 301 Va. 1, 8 (2022)).

On April 1, 2023, Post participated in a horseback riding lesson at a location that was owned and operated by Pines Horse Farm. Prior to the lesson, Post signed a "Horse Riding Agreement and Liability Release Form" (the "Release Form") that stated in part: "SERIOUS INJURY MAY RESULT FROM YOUR PARTICIPATION IN THIS ACTIVITY. THE PINES HORSE FARM DOES NOT GUARANTEE YOUR SAFETY OR THAT OF YOUR HORSE . . . ." It further stated that:

> **D. NATURE OF RIDING HORSES** – No horse is a completely safe horse. Horses are 5 to 15 times larger, 20 to 40 times more powerful, and 3 to 4 times faster than a human. If a rider falls from a horse to ground it will generally be at a distance of from [sic] 3 to 6 feet and the impact may result in injury to the rider. Horseback riding is the only sport where one much smaller and weaker (human) tries to impose its will on and become on [sic] unit of movement with, another much larger, stronger animal with a mind of its own (horse) and each has a limited understanding of the other. If a horse is frightened or provoked it may divert from its training and act according to its natural survival instincts which may include, but are not limited to, stopping short; changing directions or speed at will; shifting its weight; bucking; rearing; kicking; biting; or running from danger.

> **E. RIDER RESPONSIBILITY** – Upon mounting a horse and taking up the reins, the RIDER is in primary control of the horse. The RIDER's safety largely depends upon his/her ability to carry out simple instructions and his/her ability to remain balanced aboard the moving animal. The RIDER shall be responsible for his/her own safety.

> **F. CONDITIONS OF NATURE** — The Pines Horse Farm is NOT responsible for total or partial acts, occurrences, or elements of nature that can scare a horse, cause it to fall, or react in some other unsafe way. SOME EXAMPLES ARE: thunder, lightening [sic], rain, wind, wild and domestic animals, insects, reptiles, which may walk, run, fly near, bite and/or sting a horse or person; and irregular footing on out-of-door groomed or wild land which is subject to constant change in condition according to weather, temperature, and natural and man-made changes in landscape.

> **G. LIABILITY RELEASE** – In consideration of The Pines Horse Farm allowing my participation in this activity, under the terms set forth herein, I, the RIDER, and the parent or guardian thereof if a minor, do agree to hold harmless and release The Pines Horse Farm, its owners, agents, employees, officers, premises owners, insurers, and affiliated organizations from legal liability for injury or losses of any economic and non-economic losses due to bodily injury, death, property damage,

sustained by me and/or my minor child or legal ward in relation to the premises and operations of The Pines Horse Farm, to include while riding, handling, or otherwise being near horses owned by or in the care, custody and control of The Pines Horse Farm.

During her lesson, the tack[1] broke on the saddle of the horse Post was riding. Post fell off the horse and was injured. Post filed a negligence action against Pines Horse Farm, alleging that Pines Horse Farm "failed to maintain the tack" used by Post during her lesson, failed to properly supervise and advise her during her lesson, and failed to warn her of the defective condition of the tack that they "knew or should have known" existed.

Following various written interrogatories, requests for admission, and responses,[2] Pines Horse Farm moved for summary judgment. Pines Horse Farm argued that Post could not recover because Post had executed a waiver and release of liability pursuant to Code § 3.2-6202,[3] admitted she did not have evidence that Pines Horse Farm knowingly provided her with faulty tack, and did not allege that Pines Horse Farm intentionally injured her nor any of the exceptions to the liability prohibition in Code § 3.2-6202(A). After reviewing briefs on the matter and conducting a hearing on the motion, the circuit court granted the motion for summary judgment. Post filed a motion for reconsideration. The circuit court denied the motion. Post appeals.

---

[1] Tack is "stable gear especially: articles of harness (such as saddle and bridle) for use on a saddle horse." *Tack*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/tack.

[2] In an admission from Post, she stated that she had been cantering when "she was thrown from her horse after the tack . . . snapped." She further stated that it was "[u]pon information and belief, [that the Pines Horse Farm] knowingly provided [her] with faulty tack. However, [she] ha[d] no evidence at [the] time." Post also said that she secured the tack to the horse and "did not inspect nor was she qualified to inspect the tack."

[3] Code § 3.2-6202 limits the liability of "equine activity sponsors" for injuries to a participant "resulting from the intrinsic dangers of equine activities."

ANALYSIS

Post argues that the circuit court erred in granting summary judgment because Pines Horse Farm can be liable for her injury under Code § 3.2-6203(2).

We review a trial court's decision granting summary judgment de novo. *Stahl*, 301 Va. at 8. And, as stated previously, we apply "the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fauber*, 79 Va. App. at 673 (quoting *Stahl*, 301 Va. at 8). A circuit court shall grant a motion for summary judgment when it appears from the pleadings, the orders, and the admissions that the moving party is entitled to judgment. Rule 3:20. Moreover, "we review questions of statutory interpretation de novo." *Stahl*, 301 Va. at 8.

I. Statutory Limitation

Code § 3.2-6202 limits the liability of equine activity as follows:[4]

> A. Except as provided in § 3.2-6203, an equine activity sponsor, an equine professional, or any other person, which shall include a corporation, partnership, or limited liability company, shall not be liable for an injury to or death of a participant resulting from the intrinsic dangers of equine activities and, except as provided in § 3.2-6203, no participant . . . shall have or make any claim against or recover from any equine activity sponsor, equine professional, or any other person for injury,

---

[4] A horse is an "[e]quine." Code § 3.2-6200. An "[e]quine activity sponsor" is "any person or his agent who . . . sponsors, organizes, or provides the facilities for an equine activity." Code § 3.2-6200. An "[e]quine activity" includes "rides, trips, hunts, or other equine activities of any type however informal or impromptu that are sponsored by an equine activity sponsor." Code § 3.2-6200. An "[e]quine professional" is a "person or his agent . . . engaged for compensation in . . . instructing a participant or renting to a participant an equine for the purpose of riding, driving, or being a passenger upon an equine." Code § 3.2-6200. A "[p]articipant" is "any person . . . who engages in an equine activity . . . ." Code § 3.2-6200. "Intrinsic dangers of equine activities" are "those dangers or conditions that are an integral part of equine activities." Code § 3.2-6200.

loss, damage, or death of the participant resulting from any of the intrinsic dangers of equine activities.[5]

B. Except as provided in § 3.2-6203, no participant . . . who has knowingly executed a waiver of his rights to sue or agrees to assume all risks or intrinsic dangers of equine activities may maintain an action against or recover from an equine activity sponsor or an equine professional for an injury to or the death of a participant engaged in an equine activity. The waiver shall give notice to the participant of the intrinsic dangers of equine activities . . . .

As an initial matter, Pines Horse Farm is an "equine activity sponsor," "equine professional," or other such person under Code § 3.2-6202, because it is as an entity who "provides the facilities for an equine activity" and is "engaged for compensation in . . . instructing a participant" in riding a horse. Code § 3.2-6200. Furthermore, as a person engaged in horseback riding lessons, Post is a "participant" under Code § 3.2-6202.[6]

II. Exceptions to the Liability Limitation

Notwithstanding Code § 3.2-6202, Code § 3.2-6203 lists three circumstances that allow liability. Code § 3.2-6203 states that "[n]o provision of this chapter shall prevent or limit the liability of an equine activity sponsor or equine professional or any other person who":

1. Intentionally injures the participant;

2. Commits an act or omission that constitutes negligence for the safety of the participant and such act or omission caused the injury, unless such participant . . . has expressly assumed the

_____

[5] "The waiver shall give notice to the participant of the intrinsic dangers of equine activities and may be executed at a location other than that of the equine activity." Code § 3.2-6202.

[6] On appeal, Pines Horse Farm argues that it is a "participant" rather than an "equine activity sponsor" under the statute. It claims that because "intrinsic dangers of equine activities" include "the potential of a participant acting in a negligent manner that may contribute to injury to the participant or others" and it is a "participant," it cannot be held liable for Post's injury. However, this argument ignores our duty "to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." *Bd. of Supervisors v. Cohn*, 296 Va. 465, 473 (2018) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)).

risk causing the injury in accordance with subsection B of § 3.2-6202; or

3. Knowingly provides faulty equipment or tack and such equipment or tack was faulty to the extent that it did cause the injury or death of the participant.

III.   Whether Pines Horse Farm can be liable for Post's injury under Code § 3.2-6203(2)

Post contends that Pines Horse Farm provided her with faulty tack, and because the tack was faulty, when the horse she was riding moved in a certain way, the tack snapped and she fell from her horse.  Further, in her complaint, Post specifically alleged that it was because of this negligence that she suffered her injury.  In other words, Post argues that but for the faulty tack snapping, she would have regained her balance and not fallen from the horse.  Thus, Post submits that Pines Horse Farm "commit[ted] an act or omission that constitutes negligence" and that "such act or omission caused [her] injury."  Code § 3.2-6203(2).  We next turn to whether Post expressly assumed the risk causing her injury.

Pines Horse Farm argues that Post's signing of the Release Form prevents it from being liable, because she assumed the risk causing her injury.  Pines Horse Farm points to specific language in the Release Form where Post acknowledged that "[i]f a rider falls from a horse to ground it will generally be at a distance of from [sic] 3 to 6 feet and the impact may result in injury to the rider."  Although the risk of receiving faulty tack is not expressly assumed in the Release Form, Pines Horse Farm asserts that, because of the acknowledgment that she could fall from the horse and suffer injury, Post assumed the "risk of falling and suffering injury for whatever cause."  We disagree with Pines Horse Farm's contention.

In essence, Pines Horse Farm argues that the assumption of risk inquiry must end at "falls from a horse," ignoring the facts alleged thereafter that gave rise to the fall.  Following this logic and interpretation of what it means to expressly assume the risk of injury would lead us to an absurd result.  *See Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)

("[W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity."). In her complaint, Post alleged that the negligent provision of faulty tack caused her injury. But this was not one of the risks expressly assumed in the Release Form. For example, Post acknowledged that certain weather conditions may scare the horse and that the horse could stop short, buck, rear, kick, or otherwise act in a way that could cause injury to the rider. But the particular conduct causing Post's injury—receiving faulty tack—was not mentioned expressly in the Release Form. A general acknowledgment that falling from a horse is possible and that it may cause injury is insufficient to absolve Pines Horse Farm from all negligent acts and omissions that could lead to participants falling from their horse, and it is not an express assumption of the risk causing the injury under Code § 3.2-6203(2). In sum, we hold that the risk of receiving faulty tack was not expressly assumed by Post in the Release Form, and, as such, the circuit court erred in granting summary judgment in favor of Pines Horse Farm.

Post pleaded that Pines Horse Farm negligently maintained and provided her with faulty tack and that the faulty tack caused her injury. And, as stated above, Post did not expressly assume the risk of receiving faulty tack, and her general assumption of the risk that she could fall from her horse is insufficient to expressly assume the risk of receiving faulty tack. Thus, Post sufficiently alleged that Pines Horse Farm is liable for her injury under Code § 3.2-6203(2).[7] Accordingly, the circuit court erred in granting Pines Horse Farm's motion for summary judgment.[8]

---

[7] In her complaint, Post pleaded that Pines Horse Farm "should have known" that the tack was defective, and that allegation suffices at the summary judgment stage to allege negligence.

[8] We note—but do not rely on—Pines Horse Farm's concession at oral argument that subsections 2 and 3 of Code § 3.2-6203 can be harmonized and that the specific reference to knowingly providing faulty equipment or tack in subsection 3 does not prohibit unknowingly

CONCLUSION

For the foregoing reasons, we reverse the circuit court's decision to grant summary judgment and remand the case for further proceedings.

*Reversed and remanded.*

---

providing faulty equipment or tack from falling under subsection 2. *See Alexander v. Cobb*, 298 Va. 380, 388 (2020) ("[A] party cannot concede the law.").